IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GLENN DISTRIBUTORS CORP.,** | : | |
| Plaintiff, | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **SANFORD, LP,** | : | **No. 12-513** |
| Defendant. | : | |

**MEMORANDUM**

**Schiller, J.**                                                                                                                                             **April 22, 2014**

      Sanford, LP ("Sanford") moves to enforce an agreement with Glenn Distributors Corp. ("Glenn Distributors") to settle Glenn Distributors's claims of breach of contract, breach of warranty, and unjust enrichment. The parties reached this settlement agreement on the morning of trial, and the terms were placed on the record. Each party asks the Court to order the other party to execute an agreement that it drafted. The Court grants Sanford's motion to enforce the settlement agreement, but finds that neither party's draft accurately captures the agreement's terms. Rather, the Court will enforce the agreement on the following terms. First, Sanford will pay $250,000 to Glenn Distributors after one of two events: (1) the shipment by Glenn Distributors to Sanford of products that were the subject of this lawsuit and Sanford's receipt of those products; or (2) the destruction by Glenn Distributors of products that were the subject of this lawsuit, with Glenn Distributors bearing the cost of destruction. Second, Glenn Distributors will not bring any claims against Sanford relating to Sanford products that were either in Glenn Distributors's warehouse on February 4, 2014, or were sold by Glenn Distributors before that date. However, if Glenn Distributors is sued, it may bring a third-party claim against Sanford for indemnity.

**I.     BACKGROUND**

Glenn Distributors sued Sanford for breach of contract, breach of warranty, and unjust enrichment, claiming that Sanford sold Glenn Distributors defective pens and pencils. (Compl. ¶¶ 17, 21-46.) On February 4, 2014, when trial was scheduled to begin, the parties agreed to settle. After discussing settlement with the Court, the parties placed the terms of their agreement on the record. The parties subsequently informed the Court that they could not agree on the language of a written agreement. The Court held a conference call with the parties on March 4, 2014, in an attempt to resolve their differences. Sanford now moves to enforce the settlement agreement according to terms that it drafted. Glenn Distributors opposes Sanford's motion and asks the Court to enforce a different agreement that Glenn Distributors drafted.

**II.    DISCUSSION**

The enforceability of settlement agreements is governed by state contract law. Under Pennsylvania law, a court may enforce a settlement agreement if: (1) both parties manifested an intention to be bound by the terms of the agreement, and (2) the terms are sufficiently definite to be specifically enforced. *Shell's Disposal & Recycling, Inc. v. City of Lancaster*, 504 F. App'x 194, 200 (3d Cir. 2012). In the course of enforcing a settlement agreement, a court may interpret its terms as a matter of law if the court finds that those terms are clear and unambiguous. *See Allied Erecting & Dismantling Co. v. USX Corp.*, 249 F.3d 191, 201 (3d Cir. 2001).

    **A.     Intention to be Bound**

The Court finds that the first requirement for enforceability is met. Both Sanford and Glenn Distributors manifested an intention to be bound by the terms placed on the record at the settlement hearing of February 4, 2014. At the opening of the hearing, the Court stated, "[T]he case will be settled. Now, these are the terms." (Tr. 3:15-16.) Indeed, the parties agree that the

transcript of the hearing reflects the terms of their settlement agreement. (Sanford's Mem. of Law in Supp. of Mot. to Enforce Settlement [Sanford Mem.] at 2 ("[T]he settlement was placed on the record."); Glenn Distributors's Mem. in Opp'n to Mot. of Def. Sanford to Enforce Settlement Agreement [Glenn Mem.] at 1 ("[T]he terms were placed on the record in court.").)

The parties may be bound only by the terms to which they assented, and it is the Court's role to identify these terms. *See Simulate, Inc. v. Clark-O'Neill, Inc.*, Civ. A. No. 96-3660, 1996 WL 706598, at *2-3 (E.D. Pa. Dec. 2, 1996) (relying on the record of a settlement conference and the parties' motions to identify the terms of a settlement agreement); *Wolf v. Consol. Rail Corp.*, 840 A.2d 1004, 1007 (Pa. Super. Ct. 2003) (holding that the trial court could not compel a party to sign a release that contained terms not included in the settlement agreement placed on the record shortly before trial).

The transcript of the hearing clearly reflects that the parties agreed to the following terms. First, Sanford agreed to pay $250,000 to Glenn Distributors after one of two events: (1) the shipment by Glenn Distributors to Sanford of products that were the subject of this lawsuit and Sanford's receipt of those products; or (2) the destruction by Glenn Distributors of products that were the subject of this lawsuit, with Glenn Distributors bearing the cost of destruction. (Tr. at 3:23-5:21.) Second, Glenn Distributors agreed not to bring any claims against Sanford relating to Sanford products that were either in Glenn Distributors's possession on February 4, 2014, or were sold by Glenn Distributors before that date. (Tr. at 6:21-7:10; 7:18-8:2.) However, if Glenn Distributors is sued, it may still bring a third-party claim against Sanford for indemnification. (Tr. at 8:5-6 ("Court: Third-party claims has nothing to do with it."); Tr. at 8:2-4 ("Mr. Nachmani [Counsel for Glenn Distributors]: . . . we're releasing our claims. We're not releasing third-party claims.").)

The parties do not dispute that Sanford agreed to pay Glenn Distributors $250,000 upon the destruction or return of the products underlying this lawsuit. (Sanford Mem. Ex. I [Sanford Draft Agreement] at 1-2; Glenn Mem. Ex. B [Glenn Draft Agreement] at 1-2.) The parties also do not dispute that Glenn Distributors agreed not to bring claims against Sanford relating to products that Sanford sold Glenn Distributors on or before February 4, 2014. (Sanford Draft Agreement at 3; Glenn Draft Agreement at 3.) The central disputes between the parties concern indemnification and mutual release. Each party argues that the agreement requires the other party to indemnify it for liability arising from lawsuits brought by third parties. In addition, the parties dispute whether Sanford agreed to release any future claims against Glenn Distributors. For the following reasons, the Court finds that the parties did not agree to any indemnification requirement, and that the question whether the parties agreed to mutual releases is moot.

1. *Indemnification requirement*

Sanford argues that the agreement requires Glenn Distributors to indemnify Sanford, but does not require Sanford to indemnify Glenn Distributors, for claims brought by third parties relating to products that Sanford sold to Glenn Distributors on or before February 4, 2014, and that Glenn Distributors then re-sold. (Sanford Mem. at 2.) Glenn Distributors argues that the agreement requires Sanford to indemnify Glenn Distributors, but does not require Glenn Distributors to indemnify Sanford, for claims brought by third parties for injuries caused by Sanford's products. (Glenn Mem. at 4-5.) However, the parties never discussed any indemnification requirement on the record at the settlement hearing. To support its argument on indemnification, Sanford points to the following statement by Sanford's counsel: "we want a full release." (Tr. at 6:23; Sanford Mem. at 9.) However, the term "full release" does not convey a demand that Glenn Distributors indemnify Sanford for claims brought by third parties. In

4

addition, after demanding a "release," Sanford's counsel said, "We don't want to be coming back with Glenn Distributors suing us." (Tr. at 7:21-24.) Counsel for Glenn Distributors responded, "we're releasing our claims. We're not releasing third-party claims." (Tr. at 8:2-4.) The issue of indemnification arose only because Glenn Distributors made clear that if it is sued, it can still bring a third-party claim against Sanford for indemnity. Because the record is not reasonably susceptible to more than one interpretation, the Court finds as a matter of law that neither party agreed to a requirement that it indemnify the other party.

Both parties argue that their claims to indemnification find support in an off-the-record discussion with the Court on February 4, 2014, before the settlement hearing. (Sanford Mem. at 2; Glenn Mem. at 3.) However, these discussions were preliminary and did not create an enforceable contract. *See Jenkins v. Cnty. of Schuylkill*, 658 A.2d 380, 383 (Pa. Super. Ct. 1995) ("It is also well-settled that absent a manifestation of an intent to be bound, . . . negotiations concerning the terms of a possible future contract do not result in an enforceable agreement."); *Parrish v. Taystee Baking Co.*, Civ. A. Nos. 0115, 1902, 2004 WL 3561258, at *196-7 (Pa. Ct. Com. Pl. Dec. 28, 2004) (agreeing with plaintiff that preliminary settlement discussions held on the morning of trial, before the terms of the agreement were placed on the record, could not be considered to determine the intent of the parties). On-the-record statements by the Court and the parties at the settlement hearing make clear that the parties understood that record to be a complete reflection of the agreement's terms. Therefore, the Court will not interpret preliminary off-the-record discussions to create binding obligations on the parties that they did not raise at the settlement hearing.

2. *Mutual release*

Glenn Distributors argues that Sanford agreed to release claims against Glenn Distributors relating to products in Glenn Distributors's warehouse on February 4, 2014 or sold by Glenn Distributors before that date. To support its argument, Glenn Distributors points to the following statement by the Court at the settlement hearing: "there'll be releases exchanged, and it's understood that this washes the hands of both parties of each other." (Tr. at 5:22-24.) Sanford denies that it agreed to release any future claims against Glenn Distributors. (Sanford Mem. at 8.) The Court need not resolve this dispute. Even if the parties did agree to mutual releases, that agreement is too indefinite to be enforced, as explained below.

**B.     Definiteness**

Even terms to which the parties agreed may be too indefinite to be enforced. *Shell's Disposal & Recycling*, 504 F. App'x at 202; *see also* Restatement (Second) of Contracts § 33 (providing that the terms of a contract, to be enforceable, must provide a basis for determining the existence of a breach and for giving an appropriate remedy). Whether the terms of a contract are sufficiently definite is a question of law for the Court. *Am. Eagle Outfitters*, 584 F.3d at 585. The Court finds that any agreement to exchange releases is not sufficiently definite to be enforced. The only statement on the record regarding a release by Sanford of claims against Glenn Distributors is the following statement by the Court: "And there'll be releases exchanged, and it's understood that this washes the hands of both parties of each other." (Tr. at 5:22-24.) Neither party discussed Sanford's release of claims against Glenn Distributors. By contrast, the parties discussed in detail which claims Glenn Distributors promised to give up against Sanford. (Tr. at 6:21-7:10; 7:18-8:2.) Because the record provides no details on any release of Sanford's claims, the Court finds that such a release is too indefinite to be enforced. The Court may strike

an unenforceable term and enforce the rest of the contract if the unenforceable term is not an essential part of the agreed-upon exchange. *Sloan v. Frascella*, Civ. A. No. 12-3609, 2013 WL 4433366, at *4 (E.D. Pa. Aug. 16, 2013). Glenn Distributors's failure to demand or discuss a release of Sanford's claims at the settlement hearing reflects that the release was not an essential part of the bargain. Therefore, the Court reads the agreement to exclude any requirement that Sanford release claims against Glenn Distributors. *Accord id.* at *4 (striking a contractual term for indefiniteness, but enforcing the remainder of the contract because the term was not an essential part of the agreed-upon exchange).

### III.  CONCLUSION

The Court grants Sanford's motion to enforce the settlement agreement in accordance with the terms contained in the Order of April 22, 2014, and as described in this Memorandum.